DECHERT LLP
Matthew L. Larrabee, Esq. (SBN 97147)
matthew.larrabee@dechert.com
Joshua D. N. Hess, Esq. (SBN 244115)
joshua.hess@dechert.com
633 West 5th Street, 37th Floor
Los Angeles, CA 90071
Telephone: (213) 808-5700
Facsimile: (213) 808-5760

David A. Kotler, Esq. (*Admitted Pro Hac Vice*)
david.kotler@dechert.com
Suite 500
902 Carnegie Center
Princeton, NJ 08540
Telephone: (609) 955-3226
Facsimile: (609) 955-3259

Attorneys for Defendants PIMCO Funds, E. Philip
Cannon, J. Michael Hagan, Ronald C. Parker, and
Vern O. Curtis

[Additional Parties and Counsel on Signature Page]

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION – SANTA ANA

| | |
|---|---|
| WILLIAM T. HAMPTON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PACIFIC INVESTMENT MANAGEMENT COMPANY LLC, PIMCO FUNDS, E. PHILIP CANNON, J. MICHAEL HAGAN, BRENT R. HARRIS, DOUGLAS M. HODGE, RONALD C. PARKER, VERN O. CURTIS, WILLIAM J. POPEJOY,<br><br>Defendants. | No.  8:15-CV-00131-CJC-JCG<br><br>Hon. Cormac J. Carney<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS (Fed. R. Civ. P. 12(b)(6))**<br><br>Hearing Date:    November 2, 2015<br>Time:                 1:30 p.m.<br>Location:           Courtroom 9B<br>Judge:              Hon. Cormac J. Carney |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................ 1

LEGAL ARGUMENT ........................................................................ 3

I.    SLUSA BARS EACH OF PLAINTIFF'S CLAIMS AS A MATTER OF LAW.................................................................................... 3

    A.    Plaintiff's Claims Remain Based On Allegations That Shareholders Purchased Or Held Shares In Reliance On Alleged Misrepresentations Or Omissions In The Fund's Prospectus.............. 3

    B.    Plaintiff Bases His Claims On Misrepresentations Or Omissions "In Connection With" The Sale Of Covered Securities ....................... 6

    C.    The Delaware Carve-Out Does Not Save Plaintiff's Claims .............. 7

II.   PLAINTIFF FAILS TO PLEAD THE EXISTENCE OR BREACH OF ANY CONTRACT OR COVENANT ........................................... 9

    A.    The Fund's Prospectus Is Not A Contract ........................................... 9

    B.    The 15% Cap Is Not A Fundamental Investment Policy ................... 10

    C.    Plaintiff Fails To Plead A Contractual Breach .................................. 13

III.  PLAINTIFF FAILS TO PLEAD BREACH OF FIDUCIARY DUTY ........ 15

    A.    Plaintiff Has Now Waived His Breach Of Care Claim ...................... 15

    B.    Plaintiff Fails To Plead A Breach Of Trust ....................................... 15

IV.  PLAINTIFF FAILS TO PLEAD A CLAIM FOR AIDING AND ABETTING ................................................................................ 17

V.    PLAINTIFF'S CLAIMS MUST BE ASSERTED DERIVATIVELY ......... 18

VI.  PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH PREJUDICE ................................................................................ 18

VII. CONCLUSION ........................................................................ 19

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**Page(s)**

3

**CASES**

4
5
*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................16, 17

6
7
*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).....................................................................................16

8
9
*Chadbourne & Parke LLP v. Troice*,
134 S. Ct. 1058 (2014)...................................................................................7

10
*Cohen v. Stratosphere Corp.*,
115 F.3d 695 (9th Cir. 1997).........................................................................9

11
12
*Demoulas v. Demoulas*,
No. 902344B, 1993 WL 818620 (Mass. Super. Ct. Oct. 4, 1993)....................17

13
14
*Dudeck v. Prudential Securities, Inc.*,
295 F.3d 875 (8th Cir. 2002).....................................................................4, 5

15
16
*Freeman Investments, L.P. v. Pacific Life Insurance Co.*,
704 F.3d 1110 (9th Cir. 2013)...............................................................5, 6, 7

17
18
*Halebien v. Berv*,
931 N.E.2d 986 (Mass. 2010) .....................................................................18

19
20
*In re Charles Schwab Corp. Securities Litigation*,
No. C 08-01510 WHA, 2010 WL 1261705 (N.D. Cal. Mar. 30, 2010) ...........13

21
22
*In re Charles Schwab Corp. Securities Litigation*,
No. C 08-01510 WHA, 2010 WL 1463490 (N.D. Cal. Apr. 8, 2010).........12, 13

23
*In re Charles Schwab Corp. Securities Litigation*,
No. C 08-01510 WHA, 2009 WL 1371409 (N.D. Cal. May 15, 2009)............17

24
25
*In re Kingate Management Ltd. Litigation*,
784 F.3d 128 (2d Cir. 2015)......................................................................5, 6

26
27
28
*In re Metlife Demutualization Litigation*,
No. CV 00-2258 (TCP) (AKT), 2006 WL 2349998 (E.D.N.Y. Aug. 7, 2006) ...............................................................................................................9

*Lapidus v. Hecht*,
    232 F.3d 679 (9th Cir. 2000)......................................................................10, 18

*Leadsinger, Inc. v. BMG Music Publishing*,
    512 F.3d 522 (9th Cir. 2008)................................................................................18

*McKesson HBOC, Inc. v. New York State Common Retirement Fund, Inc.*,
    339 F.3d 1087 (9th Cir. 2003).............................................................................9

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006)..............................................................................................7

*Northstar Fiancial Advisors, Inc. v. Schwab Investments*,
    615 F.3d 1106 (9th Cir. 2010)........................................................................16

*Northstar Financial Advisors Inc. v. Schwab Investments*,
    No. 8-CV-04119-LHK, 2015 WL 5785549 (N.D. Cal. Oct. 5, 2015)........passim

*Northstar Financial Advisors Inc. v. Schwab Investments*,
    779 F.3d 1036 (9th Cir. 2015)...................................................................passim

*O'Brien v. Pearson*,
    868 N.E.2d 118 (Mass. 2007) ..................................................................16, 17

*United States v. Woods*,
    335 F.3d 993 (9th Cir. 2003) .........................................................................13

**STATUTES**

15 U.S.C. § 77p ..............................................................................................7, 8

15 U.S.C. § 80a-8(b).............................................................................10, 11, 12

15 U.S.C. § 80a-13(a)(3)...................................................................................12

Massachusetts General Laws ch. 203E § 804.....................................................15

**OTHER AUTHORITIES**

48 Fed. Reg. 37962 (Aug. 22, 1983) ......................................................12, 13, 14

Fed. R. Civ. P. 11.............................................................................................1, 4

SIC Code List, Division of Corporation Finance, *available at*
    http://www.sec.gov/info/edgar/siccodes.htm....................................................13

DECHERT LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

REPLY IN SUPPORT OF MOTION TO
DISMISS, CASE NO.  8:15-CV-00131-CJC-JCG

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Having previously represented in a motion signed pursuant to Fed. R. Civ. P. 11 that Plaintiff sought Lead Plaintiff status under the PSLRA[1] in order to pursue a securities fraud case predicated on an alleged misrepresentation, Plaintiff now flatly disavows this core representation and claims instead to assert garden-variety contract and fiduciary breach claims. *See* Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss ("Opp."), at 3, ECF No. 64. At best, Plaintiff's attempted about-face is specious, as it wantonly ignores the actual allegations of the FAC and does not change the gravamen of Plaintiff's claims: the Fund disclosed an investment limit (the 15% Cap) in its prospectus, shareholders purchased and held Fund shares in reliance on that representation, the Fund purportedly deviated from that investment limit without prior notice, and Plaintiff was thereby harmed. As the district court in *Northstar Financial Advisors Inc. v. Schwab Investments* recently held, this set of allegations constitutes "a misrepresentation in the most classic sense." No. 8-CV-04119-LHK, 2015 WL 5785549, at *16 (N.D. Cal. Oct. 5, 2015).[2] The FAC therefore must be dismissed in its entirety under SLUSA. Plaintiff's strained attempts to avoid SLUSA's straightforward application, such as turning his run-of-the-mill misrepresentation claim into an unpled and illogical "voting rights" claim, all fail as a matter of settled law.

The FAC also fails in full because it is predicated on a non-existent

---

[1] Terms not otherwise defined herein are set forth in Defendants' Memorandum of Points and Authorities in Support of Their Motion to Dismiss, ECF No. 57.

[2] Consistent with the nomenclature used in the *Northstar* opinions, the Ninth Circuit's March 9, 2015, ruling, captioned *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015), is referred to as "*Northstar V*" and the District Court's October 5, 2015 ruling, captioned *Northstar Financial Advisors Inc. v. Schwab Investments*, 2015 WL 5785549, is referred to as "*Northstar VI.*"

"contract."  While Plaintiff declares that the Fund's prospectus created a contract between the Fund and its shareholders, Plaintiff does not—and, indeed, cannot—allege facts suggesting how that could be true.  Plaintiff does not dispute that the only possible "contract" relevant to this case would have to be based upon a "fundamental" policy of the Fund that could not be changed absent shareholder approval.  Section 8(b)(1) of the Investment Company Act of 1940 ("ICA"), which enumerates the specific policies that are always "fundamental" to a fund, does <u>not</u> include the 15% Cap, nor is the 15% Cap an "industry concentration" policy under the ICA.  Further, Section 8(b)(2) of the ICA gives the <u>Fund</u> sole authority to designate which additional policies may be changed only by shareholder vote.  If Plaintiff wished to show that the 15% Cap is an enforceable contract, Plaintiff's FAC presumably would refer to specific language from the Fund's prospectus specifically designating the 15% Cap as a "fundamental" policy or prohibiting any change to that policy absent shareholder vote.  But such language is <u>not</u> quoted in the FAC or in Plaintiff's opposition—because it does <u>not</u> exist.  Instead, Plaintiff is left with the erroneous argument that the Court can "infer" that the 15% Cap is fundamental and therefore required shareholder approval to be changed.  This (as described below) is not the law.  As such, even under *Northstar V*, the FAC has not—and cannot—allege a contract as a matter of law.  Plaintiff's Opposition also does nothing to alter the conclusion that even if the 15% Cap were somehow part of an enforceable contract, the FAC fails to allege a breach of that limitation.

The Opposition also fails to provide any basis to sustain the scantily-pled breach of fiduciary duty claim against the Fund's trustees.[3]  As such, both the breach of fiduciary duty claim and the aiding and abetting claim against PIMCO must be dismissed.  Moreover, all of the FAC's claims still fail because they are

---

[3] One of the Trustee Defendants, Vern O. Curtis, passed away after Plaintiff filed the FAC.

derivative claims that belong to the Fund under Massachusetts law, and Plaintiff does not dispute that he failed to make a demand on the Fund's Board of Trustees.

Accordingly, and for the reasons set forth in Defendants' Opening Brief, each of Plaintiff's FAC claims should be dismissed with prejudice.

## LEGAL ARGUMENT

### I.   SLUSA BARS EACH OF PLAINTIFF'S CLAIMS AS A MATTER OF LAW

#### A.   Plaintiff's Claims Remain Based On Allegations That Shareholders Purchased Or Held Shares In Reliance On Alleged Misrepresentations Or Omissions In The Fund's Prospectus

As Defendants established in their opening brief, the central thrust of Plaintiff's claims is that Defendants made misrepresentations or omissions to the shareholders. This is clear from the allegations of the FAC itself:

- Plaintiff was appointed Lead Plaintiff under the PSLRA when this case was still an avowed securities fraud claim and touts that position in the FAC. FAC ¶ 15.

- Plaintiff amended his complaint to assert state-law causes of action premised on the notion that the Defendants made repeated representations about an investment policy of the Fund, deviated from that investment policy, and concealed that deviation from shareholders. *Id.* ¶¶ 7, 8, 9, 71.

- Plaintiff alleges that the common questions of law in this case include "whether Defendants made specific representations about investments in emerging markets in the Fund's prospectuses" and "whether Defendants deviated from specific representations about investments in emerging markets." *Id.* ¶ 81.

- Plaintiff alleges that the purported incorrect statements about certain investments, rather than the investments themselves, caused his alleged harm. *Id.* ¶ 72 ("[T]he Trust's <u>statements</u> . . . directly or proximately caused, or were a substantial contributing cause of, the damages"

1  (emphasis added)).

2  Plaintiff now pointedly ignores all of these allegations (all of which were backed by

3  Rule 11) and seeks to reframe his case with assertions related to the nature of his

4  causes of action that are not based upon—and in some instances contradicted by—

5  the actual allegations set forth in his complaint.  Plaintiff cannot, however, run

6  away from the FAC's allegations while still maintaining this lawsuit.

7       A district court within the Northern District of California recently reaffirmed

8  that SLUSA precludes nearly identical state-law claims against a mutual fund as

9  those presented here, *i.e.*, where the gravamen of the complaint is that "Defendants

10  allegedly misrepresented or omitted a material fact from the Fund's shareholders,

11  which resulted in financial losses to these shareholders." *Northstar VI*, at *18.

12  That is precisely the claim alleged in the FAC (other than the fact that *Northstar*

13  actually involved a fundamental investment policy adopted by shareholder vote,

14  whereas the policy at issue here is not).  As was the case in *Northstar*, Plaintiff here

15  alleges that shareholders invested in a mutual fund that represented it would abide

16  by a certain investment restriction and the shareholders were harmed when the fund

17  deviated from it.  *Id*. at *1; FAC ¶¶ 7, 8.  Further, both cases are asserted as putative

18  class actions on behalf of a class of shareholders who purchased or held shares in a

19  time period <u>after</u> the alleged deviation.  *Northstar VI*, at *1; FAC ¶¶ 1, 76.

20  Accordingly, both cases are premised on allegations that shareholders either bought

21  or held their shares in reliance on investment restrictions at a time when the

22  respective funds were purportedly not abiding by those restrictions.  As such, as in

23  *Northstar*, the Fund's alleged failure to inform the shareholders of the change in

24  investment strategy presents a classic securities fraud claim.  *See Northstar VI*, at

25  *17 (the "decision to not say anything about the [Defendants'] purported decision

26  to deviate—and the resulting effect on the Fund's value—clearly constitutes a

27  material omission."); *Dudeck v. Prudential Sec., Inc.*, 295 F.3d 875, 879 (8th Cir.

28  2002) (SLUSA precludes claims where the "gravamen" involves a "substantive

1    omission of a material fact").

2         In *Northstar*, Judge Koh held that this theory "is <u>not</u> a garden-variety

3    contract claim.  Rather, this claim implicates the very sort of misrepresentations and

4    omissions that fall within SLUSA's reach." *Northstar VI*, at *18 (emphasis added).

5    Precisely the same conclusion is warranted here.  Plaintiff asserts that he was

6    harmed throughout the class period because Defendants failed to reveal that they

7    were deviating from the 15% Cap.  Just as in *Northstar*, Plaintiff alleges that

8    Defendants "represented . . . that [they] would do one thing but ended up doing

9    another" and "[t]hat is a misrepresentation in the most classic sense." *Id.* at *16;

10   FAC ¶¶ 7, 8.

11        Plaintiff unsuccessfully attempts to distinguish this case from *Northstar VI*

12   on three grounds.  First, Plaintiff argues that "[u]nlike the facts before the court in

13   *Northstar VI*, Defendants here openly disclosed their investments in emerging

14   markets" and "this is not a case where the defendant misrepresented what was

15   going on or hid its decision to deviate from core investment strategies."  Opp. at 21.

16   But Plaintiff's position is belied by the FAC's unequivocal and repeated allegations

17   that the Trust harmed shareholders by concealing such information. *See* FAC ¶ 71

18   ("The Trust did not even file a corrected prospectus until October 14, 2014, well

19   after risky investments with the Fund's assets in violation of the Fund's Principal

20   Investment Strategies and Investment Objectives caused investors significant

21   losses."); *id.* ¶ 10 (". . . [T]he October Supplement contained no disclosures

22   concerning whether over 15% of the Fund's assets had previously been invested in

23   emerging markets . . . .").  Plaintiff cannot avoid dismissal of his complaint by

24   pretending that his allegations no longer exist or mischaracterizing them to suit his

25   new theory's needs.

26        Plaintiff next relies principally upon *Freeman Investments, L.P. v. Pacific

27   Life Insurance Co.*, 704 F.3d 1110 (9th Cir. 2013) and *In re Kingate Management

28   Ltd. Litigation*, 784 F.3d 128 (2d Cir. 2015) for the uncontroversial proposition that

1   some contract claims in unrelated contexts may survive SLUSA, Opp. at 19-20, but

2   neither counsel that the claims in the FAC should survive.  *Freeman* involved a

3   dispute over the meaning of a "term of art" in an insurance policy.  704 F.3d at

4   1115.  Here, Defendants deny Plaintiff has a contractual right to enforce the 15%

5   Cap, but there is no dispute as to the correct "reading" of the 15% Cap.  *Kingate*

6   declined to apply SLUSA because, unlike here, the allegedly fraudulent statements

7   were made by a third party.  784 F.3d at 149.  The <u>only</u> case to address the alleged

8   deviation from a mutual fund's investment policies is *Northstar VI*—and that case

9   squarely held that such claims are precluded by SLUSA.  *See Northstar VI*, at *22.

10      Lastly, Plaintiff also incorrectly contends in a footnote that this case presents

11   a question of contract interpretation, whereas *Northstar VI* did not.  Opp. at 21-22

12   n.8.  But nothing in the FAC suggests that there is any contractual language that

13   requires interpretation.  To be sure, in his opposition brief, Plaintiff now suggests

14   that the issue of whether the 15% Cap is based on total or net assets, and how such

15   calculations are made, is a "critical issue in this lawsuit."  *Id.*  But Plaintiff does not

16   dispute that the 15% Cap is based on <u>total</u> assets and there is no disagreement here

17   about the meaning of "total assets."[4]

### B.   Plaintiff Bases His Claims On Misrepresentations Or Omissions "In Connection With" The Sale Of Covered Securities

20      Plaintiff also attempts to avoid SLUSA preclusion by arguing that "the

21   [alleged] misrepresentation was not material to the buying or selling of a covered

22   security" and therefore the alleged misrepresentation could not have been made "in

[4] Defendants raise the fact that the Fund's QIRs are based on <u>net</u> assets as a means of demonstrating that there has not been a breach of the 15% Cap.  Plaintiff misinterprets the QIRs, not the 15% Cap, and the QIRs are not alleged to constitute the contract in this case.  Moreover, Plaintiff's suggestion that the distinction between "total or net assets" is a "critical issue" to his claims, Opp. at 22 n.8, is belied by his admission that "it is irrelevant whether the [QIRs] referred to <u>total</u> or <u>net</u> assets[.]"  *Id.* at 12 (emphasis in original).

1   connection with" the purchase or sale of a covered security, as required by SLUSA.

2   Opp. at 22; 15 U.S.C. § 77p.[5]  Plaintiff is again wrong as a matter of settled law.

3        It is well established that the phrase "in connection with" in SLUSA must be

4   interpreted broadly and covers a wide range of misrepresentations so long as they

5   are not entirely "tangential" to the "covered security."  *See Merrill Lynch, Pierce,*

6   *Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) (both the Supreme Court and

7   the SEC apply a "broad construction" to the language "in connection with the

8   purchase or sale"); *Freeman*, 704 F.3d at 1114, 1116 ("in connection with" requires

9   showing only of something more than "some tangential relation").

10       Here, Plaintiff alleges that shareholders purchased or held shares in reliance

11  on statements in the Fund's prospectus—the principal document through which the

12  Fund markets itself to investors—that the Fund would apply certain investment

13  restrictions at a time when the Fund was not, in fact, applying such restrictions.

14  FAC ¶¶ 7-8.  Such alleged misrepresentations plainly bear more than a "tangential

15  relation" to the purchase or sale of covered securities.  Indeed, this case involves

16  the exact same type of alleged misrepresentations that were at issue in *Northstar*,

17  and the Ninth Circuit there found the "in connection with" requirement to be easily

18  satisfied.  *See Northstar V*, at 1049 n.5 ("There is no question that this class action

19  is 'in connection with the purchase or sale' of a covered security . . . .").[6]

20       **C.   The Delaware Carve-Out Does Not Save Plaintiff's Claims**

21       Finally, Plaintiff tries to evade SLUSA preclusion under the Delaware carve-

22  _____

23  [5] There is no dispute that the Fund shares are "covered securities."

24  [6] Plaintiff's reliance on *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1079

25  (2014) is misplaced.  In that Ponzi scheme case, shareholders purchased non-
    covered securities based on misrepresentations that such securities were backed by

26  covered securities.  Since there was no claim that any shareholder ever purchased or
    held a covered security, the court found that there were no misrepresentations in

27  connection with one.  Here, it is undisputed that shareholders purchased and held

28  covered securities.

1    out, but he grossly misreads that exception.  Contrary to Plaintiff's suggestion, the

2    Delaware carve-out does <u>not</u> apply whenever a shareholder claims his "voting

3    rights" have been infringed.  *See* Opp. at 23 (arguing the carve-out applies to

4    "communications . . . 'with respect to' equity holders' voting rights").  The

5    Delaware carve-out does not contain the phrase "voting rights" and is not intended

6    to be so broadly construed.  *See Northstar VI*, at *15 (the Delaware carve-out is a

7    "narrow exception to SLUSA preclusion").  Rather, the carve-out is applicable only

8    to certain types of "permissible action[s]," and the only provision that Plaintiff

9    attempts to invoke here is "a covered class action . . . involv[ing] . . . any

10   recommendation, position, or other communication with respect to the sale of

11   securities of the issuer that . . . concerns decisions of those equity holders with

12   respect to voting their securities."  15 U.S.C. § 77p(d)(1)(B)(ii)(II).  For this case to

13   be considered a "permissible action" under that theory, Plaintiff must point to a

14   specific instance where the shareholders "vot[ed] their securities" and the alleged

15   misrepresentations affected the outcome.  *Id.*  He does not, and cannot, do so.

16          The district court in *Northstar VI* appropriately rejected the same argument

17   Plaintiff makes here, finding that:

18          [I]t is clear that [plaintiff's] breach of contract claims are holder claims, and
            not voting claims. The gist of [plaintiff's] allegations, from its first
19          Complaint to the instant Complaint, is that shareholders were "deprived of
            their ability to make an informed decision concerning whether they should
20          continue holding their shares." These are holder claims. These claims do not
            concern how shareholders should have voted. Rather, they concern whether
21          or not shareholders should have held onto their shares.

22   *Northstar VI*, at *21 (citing *Crimi v. Barnholt*, No. C 08-02249, 2008 WL 4287566,

23   at *3 (N.D. Cal. Sept. 17, 2008)).  There is no basis to distinguish *Northstar VI*'s

24   conclusion on this issue, nor does Plaintiff offer one.  Indeed, Plaintiff does not cite

25   any case where the "voting" prong of the Delaware carve-out was held to apply in

26   the absence of an actual shareholder vote and, to Defendants' knowledge, no such

27

28

1  case exists.[7]  The Delaware carve-out does not apply.

2  **II.    PLAINTIFF FAILS TO PLEAD THE EXISTENCE OR BREACH OF
        ANY CONTRACT OR COVENANT**

3

4        **A.    The Fund's Prospectus Is Not A Contract**

5        Plaintiff maintains that "the Fund's prospectus served as a contract between

6  investors and Defendants," Opp. at 6, despite precedential authority establishing

7  that securities prospectuses generally do not constitute contractual offers that may

8  be accepted to form binding contracts.  *See McKesson HBOC, Inc. v. N.Y. State*

9  *Common Ret. Fund, Inc.*, 339 F.3d 1087 (9th Cir. 2003); *Cohen v. Stratosphere*

10  *Corp.*, 115 F.3d 695 (9th Cir. 1997).  Plaintiff does not allege, let alone explain,

11  how the basic elements of contract formation are present in this case.  *McKesson*

12  made clear that a prospectus does not constitute an "offer" within the meaning of

13  contract law, such that "acceptance" could give rise to a contract.  339 F.3d at 1092.

14  Plaintiff claims that the Ninth Circuit in *Northstar V* "rejected" this statement of the

15  law, Opp. at 8, but the Ninth Circuit actually affirmed *McKesson*, and simply

16  distinguished it from the claim at issue in *Northstar* because it was "predicated, in

17  part, on the approval of the fundamental investment objectives by the

18  shareholders."  *Northstar V*, at 1053.  In other words, the Ninth Circuit reaffirmed

19  that a prospectus is not a contractual offer, but held that a proxy statement that

20  approved a fundamental investment objective that placed a restraint on the Fund

21  that could only be modified with shareholder consent could qualify as a contract.

22  _____

23  [7] Plaintiff only cites *In re Metlife Demutualization Litigation*, No. CV 00-2258
   (TCP) (AKT), 2006 WL 2349998 (E.D.N.Y. Aug. 7, 2006), an unreported decision

24  from the Eastern District of New York, for his claim that the statute "does not
   explicitly require that a vote actually occur."  Opp. at 24.  But that case focused on

25  the approval of a demutualization plan *by shareholder vote*, and the court found the
   carve-out applicable because the misrepresentations "concerned . . . shareholders'

26  decisions with respect to voting in favor or against the demutualization plan."  2006

27  WL 2349998, at *6.  In reaching its conclusion, the court never even suggested the
   carve-out could apply if there was no shareholder vote.

28

1   Plaintiff does not, and cannot, allege that any such "offer" was presented to the

2   shareholders here.

3          Consequently, Plaintiff cannot avert dismissal of his claims by simply

4   invoking *Northstar V*.[8]  There is no dispute that *Northstar V*'s narrow exception to

5   the general rule that a prospectus does not constitute a contractual offer requires

6   that Plaintiff allege a fundamental investment objective was approved by

7   shareholder vote.  The FAC contains no such allegation and it cannot reasonably be

8   inferred that the Fund's prospectus, without more, formed a binding contract with

9   the shareholders.

10         **B.     The 15% Cap Is Not A Fundamental Investment Policy**

11         Because of the narrow exception afforded under *Northstar V*, Plaintiff does

12  not dispute that the success of his claim depends upon the 15% Cap being a

13  "fundamental investment objective[ ]" of the Fund.  Opp. at 9, 10.  His effort to

14  suggest that it is, however, is premised upon a profound misunderstanding of law.

15  Specifically, Plaintiff operates under the misimpression that the conclusion of

16  whether a mutual fund investment policy is "fundamental" is susceptible to

17  "inference."  *Id.* at 10.  It is not.  Instead, as set forth in the ICA, the only policies of

18  the Fund that are "fundamental" as a matter of law are those specifically

19  enumerated in 15 U.S.C. § 80a-8(b)(1) and those that the Fund expressly identifies

20  as such.  The 15% Cap is not enumerated in 15 U.S.C. § 80a-8(b)(1) and is not

21  among those policies identified by the Fund as "fundamental."  July 25, 2014

---

22  [8] Contrary to Plaintiff's suggestion, *Lapidus v. Hecht*, 232 F.3d 679 (9th Cir. 2000)

23  did not hold that a mutual fund prospectus formed a contract.  The court in that case

24  merely recognized that those "plaintiffs allege[d] violations of their contractual

25  rights as shareholders to vote on proposed changes to . . . [certain] restrictions

26  spelled out in the registration statement," without identifying the source of those

27  rights, and that such allegation was "sufficient to satisfy the injury requirement for

28  a direct action."  232 F.3d at 683; *see id.* at 681 (noting the district court "did not reach" whether the restrictions could only be changed by shareholder vote "because it dismissed . . . for lack of subject matter jurisdiction").

1   Prospectus at 26-27.[9]   Hence, the Court need go no further to reject Plaintiff's

2   claim.

3           The ICA requires a mutual fund's registration statement (which includes the

4   fund's prospectus and SAI) to set forth "a recital of all investment policies of the

5   registrant . . . which are changeable only if authorized by shareholder vote," 15

6   U.S.C. § 80a-8(b)(2), and "a recital of all policies of the registrant . . . which the

7   registrant deems matters of fundamental policy."  *Id.* § 80a-8(b)(3); Opp. at 9; *see*

8   *also* 15 U.S.C. § 80a-13(a) (listing policies only changeable by shareholder vote).

9   In compliance with this mandate, the Fund's SAI includes an exhaustive list of

10  "Fundamental Investment Restrictions" that "may not be changed with respect to a

11  Fund without shareholder approval."  *See* July 25, 2014 Prospectus at 26-27.

12  Plaintiff does not assert—in either the FAC or his brief—that the 15% Cap is listed

13  among those "Fundamental Investment Restrictions" such that it "may not be

14  changed with respect to a Fund without shareholder approval."  This ends any legal

15  basis for Plaintiff's contention that the 15% Cap can form the basis of a contract.

16          Plaintiff's protestations that the 15% Cap "qualifies" as a fundamental policy

17  because—in Plaintiff's opinion—the 15% Cap is "key" to the Fund achieving its

18  investment objective is of no moment.  Opp. at 10.  Under the ICA, a fundamental

19  investment policy does not arise because it is purportedly "key" to the Fund's

20  performance, nor does it come about by "inference," but only through express

21  designation by the Fund or by operation of Section 13(a).  Because the Fund did not

22  designate the 15% Cap as one of its fundamental investment policies and Section

23  13(a) does not provide that a policy on investments in emerging market securities is

24  "fundamental," the 15% Cap could be altered by the Fund without shareholder

25  approval as a matter of law; no amount of "inference" can find otherwise.

26

27  _____

28  [9] The July 25, 2014 Prospectus and other documents cited in this brief are attached
    as exhibits to the Declaration of Joshua D. N. Hess, ECF No. 59-1.

1     Plaintiff alternatively argues that the 15% Cap is a "policy in respect of

2  concentration of investments in any particular industry or group of industries" that

3  cannot be altered without shareholder approval under 15 U.S.C. § 80a-13(a)(3).

4  Plaintiff is again mistaken.  While the ICA does require a mutual fund's registration

5  statement to set forth "a recital of the policy of the registrant in respect of . . .

6  concentrating investments in a particular industry of group of industries," 15 U.S.C.

7  § 80a-8(b)(1)(E), the SEC has prescribed that "concentrating" means a policy to

8  invest "<u>more than 25%</u> of a Fund's net assets in a particular industry or group of

9  industries."  SEC Form N-1A, 10 (May 2015) (emphasis added); *see* 48 Fed. Reg.

10  37962 (Aug. 22, 1983) ("It is the position of the [SEC] staff that investment . . . of

11  more than 25 percent of the value of the registrant's assets in any one industry

12  represents concentration.").  Plainly, a policy that limits the Fund's investments "<u>up

13  to 15%</u> of its total assets in securities and instruments that are economically tied to

14  emerging market countries," July 25, 2014 Prospectus at 7, cannot meet that "more

15  than 25%" specification.  Accordingly, the Fund's 15% Cap cannot be deemed an

16  industry concentration policy under the ICA.[10]

17     Furthermore, Plaintiff cannot—and, notably, does not in the FAC—plausibly

18  allege that all securities and instruments with ties to emerging markets could

19  reasonably constitute a single industry or group of industries.  For one, Plaintiff has

20  not alleged—nor could he—that the Fund ever identified the collection of

21  individual national economies known as "emerging markets" as a single industry.[11]

---

[10] Even if this argument were accepted, it would not get Plaintiff very far.  Since an industry concentration policy sets the limit at 25% of net assets, there is no alleged breach of such a policy because the highest concentration of Fund assets in emerging markets alleged in the FAC (albeit using erroneous math and inapplicable comparisons) is 21.1%.  FAC ¶ 8.

[11] *See In re Charles Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2010 WL 1463490, at *5 (N.D. Cal. Apr. 8, 2010) (recognizing the SEC's guidance that "[r]egistrants selecting their own industry classifications . . . should disclose them (a) in the prospectus in the case of policy to concentrate, or (b) in the [SAI] in the

1    This omission is fatal.

2         Additionally, Plaintiff's suggestion to lump all securities and instruments of

3    "emerging markets" as part of a single, coherent "industry" directly contradicts the

4    SEC's guidance that industry classifications "'must be reasonable and should not be

5    so broad that the primary economic characteristics of the companies in a single

6    class are materially different.'"  *In re Charles Schwab Corp. Sec. Litig.*,  2010 WL

7    1463490, at *5 (quoting 48 Fed. Reg. 37962)).  The universe of potential "securities

8    and instruments tied to emerging market countries" is an exceedingly broad asset

9    class that necessarily encompasses materially different economic characteristics and

10   is plainly not an aggregation of companies that produce similar products or

11   services.[12]

12        **C.    Plaintiff Fails To Plead A Contractual Breach**

13        Because Plaintiff has not pled the existence of any contract, this Court need

14   not determine whether the FAC adequately alleges a breach.  Nevertheless, Plaintiff

15   also fails to plead that the Fund exceeded the 15% Cap.  Plaintiff does not dispute

16   that the 15% Cap is based on <u>total</u> assets, and the FAC does not allege the Fund

17   invested more than "15% of its total assets in securities and instruments that are

18   economically tied to emerging market countries."  July 25, 2014 Prospectus at 7.

19

20   case of a policy not to concentrate" (quoting 48 Fed. Reg. 37962)); *In re Charles
     Schwab Corp. Sec. Litig.*, No. C 08-01510 WHA, 2010 WL 1261705, at *6 (N.D.
21   Cal. Mar. 30, 2010) ("[A] promoter is free to define an industry in any reasonable
22   way when it establishes a fund . . . .").

23   [12] Tellingly, the SEC's Standard Industrial Classification (SIC) Code List does not
     include securities tied to emerging market countries or any similarly broad asset
24   class.  *See* SIC Code List, Division of Corporation Finance, *available at*
25   http://www.sec.gov/info/edgar/siccodes.htm (listing industries such as "metal
     mining," "wholesale-lumber & other construction materials" and "life insurance");
26   48 Fed. Reg. 37962.  This Court may take judicial notice of regulations issued by
27   government agencies.  *See, e.g.*, *United States v. Woods*, 335 F.3d 993, 1002 (9th
     Cir. 2003).
28

1   Plaintiff also does not dispute that the FAC fails to allege that the Fund exceeded

2   15% "immediately after and as a result of" an affirmative investment.  *Id.* at 18

3   (providing the "Fund would not violate [this] limitation[ ] unless an excess or

4   deficiency occurs or exists underlined immediately after and as a result of an investment."

5   (emphasis added)).  Accordingly, Plaintiff's breach of contract and implied

6   covenant claims cannot survive a motion to dismiss.

7          In opposition, Plaintiff contends that his allegation that the QIRs reported

8   emerging market exposure greater than 15% is sufficient to plausibly allege the

9   Fund exceeded the 15% Cap, notwithstanding the inherent flaws previously

10  highlighted by Defendants.  Plaintiff first insists that whether the concentration of

11  assets reported in the QIRs is based on net assets is a "question of fact that cannot

12  be resolved on the face of the pleadings."  Opp. at 11.  This position is untenable

13  because the FAC expressly refers to the QIRs as the basis for Plaintiff's breach

14  claims, FAC ¶ 51-52, and those QIRs expressly provide that "[m]arket value data

15  [is] based on percentage of net assets of the mutual fund[s]."  Q3 QIR at 158

16  (emphasis added).[13]

17         Plaintiff next asserts that even if the QIR emerging market exposure metric

18  refers to net assets, rather than total assets, those figures still demonstrate the Fund

19  had exceeded the 15% Cap.  Opp. at 12.  Plaintiff is yet again incorrect.  Foremost,

20  Plaintiff purports to utilize figures outside his requested class period.  *Compare*

21  FAC ¶ 1 (defining the class period as "between April 1, 2014 and September 12,

22

23  ─────────────────────

    [13] Plaintiff claims this explanation only applies to the market value data on the page

24  of the reports entitled "Portfolio Characteristics and Benchmark Variance"—and
    not to the market value data on the page concerning emerging market

25  concentration—because it is found within a footnote on that page.  Although

26  unavailing on its face, this position actually undercuts Plaintiff's breach claim
    because that claim would then be predicated on a comparison of a defined exposure

27  metric (the 15% Cap) to one that is undefined (the QIR metric)—an apples-to-

28  unidentified fruit comparison.

1  2014"), *with* Opp. at 12 (utilizing the Fund's total and net asset figures "[a]s of

2  March 31, 2014"). Moreover, Plaintiff's calculations are erroneous. The Q2 QIR

3  reports approximately 10.5% of net assets were exposed to emerging market

4  countries as of March 31, 2014. *See* PIMCO Funds, PIMCO Total Return Fund

5  Quarterly Investment Report (June 30, 2014). Because Plaintiff concedes that net

6  assets as of March 31, 2014, are less than its total assets on that same date, the

7  percentage of total assets exposed to emerging market countries is necessarily lower

8  (approximately 9.4%)—and thus necessarily under the 15% Cap.

9  **III.   PLAINTIFF FAILS TO PLEAD BREACH OF FIDUCIARY DUTY**

10  **A.    Plaintiff Has Now Waived His Breach Of Care Claim**

11  The FAC alleges that "the Trustees owed the shareholders a duty to use

12  reasonable care to act in the best interests of the shareholders." FAC ¶ 94. Plaintiff

13  now completely disavows that allegation by taking the position that "Plaintiffs have

14  alleged not a lapse of the duty of care, but a negligent, bad faith, willful, and/or

15  reckless breach of the duty of trust[.]" Opp. at 19. Thus, the Court need not

16  proceed any further to dismiss the breach of fiduciary duty claim pled in the FAC to

17  the extent it is based on an alleged breach of the duty of care.

18  **B.    Plaintiff Fails To Plead A Breach Of Trust**

19  Plaintiff's opposition asserts that his breach of the "duty of trust" claim

20  includes four duties set forth in Massachusetts Uniform Trust Code.[14] Plaintiff does

21  not deny that the Trustees' conduct is mentioned in only four paragraphs in the

22  FAC and that the FAC fails to allege any information about the extent to which the

23  Trustees informed themselves about the investments or exercised their business

24  judgment. Plaintiff does not deny that he fails to allege any conflict of interest.

25  _____

26  [14] Plaintiff's inclusion of Section 804 is confusing because this section imposes a

27  duty on trustees to "exercise reasonable care, skill, and caution" (Mass. Gen. Laws
ch. 203E § 804) and yet Plaintiff affirmatively disavows any intent to assert a

28  "lapse of the duty of care." Opp. at 19.

1   Instead, Plaintiff repeats his threadbare allegation that the Trustees breached their

2   duties by "investing more than 15% of the Fund's assets in emerging market

3   investments without shareholder approval."  Opp. at 15.  But, as addressed in

4   Defendants' opening brief, the FAC fatally fails to identify <u>how</u> the Trustees

5   allegedly caused this to occur.  Plaintiff's *ipsi dixit* allegations that a breach

6   occurred, without supporting facts demonstrating such a breach, are not sufficient to

7   survive a motion to dismiss.  *Bell Atl. Corp. v. Twombly*, 550 US 544, 556 (2007);

8   *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).[15]

9          Plaintiff also does not dispute that he cannot assert a private cause of action

10  under the ICA, *see Northstar Financial Advisors, Inc. v. Schwab Investments*, 615

11  F.3d 1106, 1115 (9th Cir. 2010), but nevertheless implicitly concedes that he is

12  seeking to perform an end-run around the ICA by first claiming that he inherited "a

13  contractual right under the ICA" and then asserting his fiduciary breach claim

14  "stem[s] from this contract[.]"  Opp. at 7, 17.  Although Plaintiff concedes that the

15  Supreme Judicial Court of Massachusetts has held that a "statutory violation did not

16  constitute a breach of fiduciary duty," Opp. at 17 (citing *O'Brien v. Pearson*, 868

17  N.E.2d 118, 125 n.7 (Mass. 2007), he argues that it was incorrect.  *Id.*  Despite

18  Plaintiff's unfounded arguments to the contrary, *O'Brien* remains good law.[16]

---

20  [15] Plaintiff notes that the *Northstar VI* court determined that the allegations asserted

21  there were "sufficient to support an argument that the Trustees violated both
    specific restraints imposed by the Shareholders and the officials' duty of care."

22  Opp. at 16 (citing *Northstar VI*, at *11).  But the "specific restraints" from
    *Northstar VI* were imposed by "the adoption by the shareholders of the fundamental

23  investment objectives," *Northstar VI*, at *11, whereas here there is no similar

24  "restraint" prohibiting investments in excess of the 15% Cap because the Cap is not
    a fundamental investment policy, nor was it ever adopted by the shareholders.

25  Further, Plaintiff has now waived any claim based on an alleged violation of "the

26  officials' duty of care."  Opp. at 19.

27  [16] Plaintiff implies that *O'Brien* was wrongly decided because two prior
    Massachusetts cases purportedly found "conduct violating a statute gave rise to a

28  breach of fiduciary duty" but neither case addressed a breach of fiduciary duty

1    Plaintiff further concedes that the court in *In re Charles Schwab Corp. Securities*

2    *Litigation*, No. C 08-01510 WHA, 2009 WL 1371409 (N.D. Cal. May 15, 2009),

3    determined that a violation of the ICA would not give rise to a breach of fiduciary

4    duty and argues that this case is now "dead-letter."  Opp. at 18.  Once again,

5    Plaintiff is incorrect.[17]

6         Finally, Plaintiff does not dispute the Fund's Declaration of Trust contains an

7    exculpatory clause that shields the Trustees from potential liability.  Plaintiff does

8    not deny the validity of such clauses, nor does he dispute that they bar duty of care

9    claims in Massachusetts.  *Id.* at 19.  Although exculpatory clauses do not normally

10   shield a trustee against breaches of loyalty involving bad faith, or willful, reckless,

11   or gross negligence, *id.* at 18, Plaintiff does not dispute that the FAC contains no

12   factual allegations suggesting that the Trustees ever acted as such.  Plaintiff's bald

13   and conclusory legal contention that the Trustees acted "negligently, with bad faith,

14   willfully, with gross negligence, and/or reckless disregard," FAC ¶ 96, is entitled to

15   no deference at this (or any) stage.  *Ashcroft*, 556 U.S. at 681.

16   **IV.  PLAINTIFF FAILS TO PLEAD A CLAIM FOR AIDING AND ABETTING**

17

18        Plaintiff does not deny that he cannot maintain an aiding and abetting claim

19   if the underlying breach of fiduciary claim is dismissed.  Further, there is no dispute

20   that Plaintiff must plead that PIMCO knew about the alleged breach and "actively

21   participated in it" in order to survive a motion to dismiss.  Opp. at 24 (citing

---

23   claim that was, as here and in *O'Brien*, premised exclusively on the violation of a

24   statute that provides no private cause of action.  Opp. at 17 (citing *Berish v.*

     *Bornstein*, 770 N.E.2d 961, 966 (Mass. 2002); *Demoulas v. Demoulas*, No.

25   902344B, 1993 WL 818620, at *10 (Mass. Super. Ct. Oct. 4, 1993)).

26   [17] Plaintiff's assertion is premised on the Ninth Circuit's holding in *Northstar V* that

27   the "ICA gives rise to a contract," but this is a non-sequitur.  Opp. at 18.  Even if

     the ICA could give rise to contract claims, that in no way would imply that the ICA

28   also gives rise to breach of fiduciary duty claims.

1   *Spinner v. Nutt*, 631 N.E.2d 542, 546 (Mass. 1994)).  The FAC lacks any well-pled

2   factual allegations to plausibly suggest how this standard is satisfied.  Although

3   Plaintiff pleads, without further elaboration, that PIMCO "caused" the Trustees to

4   exceed the 15% Cap, Plaintiff argues that any investment decisions ultimately

5   belong to the Trustees.  *Id.* at 16.  Further, Plaintiff pleads that PIMCO was the

6   adviser to the Fund and assisted in preparing public statements, but that standing

7   alone does not suggest that PIMCO had knowledge of any alleged breach.  *Id.* at 25.

8   **V.    PLAINTIFF'S CLAIMS MUST BE ASSERTED DERIVATIVELY**

9        There is no dispute regarding the relevant legal standards governing direct

10  and derivative claims.  The parties agree that, even under *Northstar V* and *Lapidus*,

11  injuries inflicted on a corporation give rise to derivative claims and thus, "[t]o bring

12  a direct action under Massachusetts law, a plaintiff must allege an injury distinct

13  from that suffered by shareholders generally or a wrong involving one of his or her

14  contractual rights as a shareholder, such as the right to vote."  *Lapidus*, 232 F.3d at

15  683.  Plaintiff pleads no "direct" harm other than an alleged "wrong involving

16  shareholder voting rights."  Opp. at 14.  But, as set forth above and in Defendants'

17  opening brief, Plaintiff never had any right to vote on changes to the 15% Cap

18  because it was neither a fundamental investment policy nor otherwise changeable

19  only by shareholder vote.  Accordingly, any harm to the shareholders would be

20  limited simply to the diminution in the value of their shares, meaning the primary

21  harm was to the <u>Fund</u> and any claims must be asserted derivatively.  *See Halebien*

22  *v. Berv*, 931 N.E.2d 986, 987-88 (Mass. 2010).

23  **VI.   PLAINTIFF'S CLAIMS SHOULD BE DISMISSED WITH**
            **PREJUDICE**

24

25        It is well established that courts have discretion to dismiss with prejudice

26  where amendment would "be futile."  *Leadsinger, Inc. v. BMG Music Publ'g*, 512

27  F.3d 522, 532 (9th Cir. 2008).  As demonstrated here and in Defendants' opening

28  brief, the FAC erroneously challenges a non-fundamental investment strategy that

1  can be modified or even eliminated voluntarily and unilaterally by the Fund

2  pursuant to the ICA.  "No amendment would change the conclusion that" Plaintiff

3  cannot enforce the 15% Cap and that the Fund need not call a shareholder vote to

4  modify it.  *Id.*  Additionally, no amount of "artful pleading" will change the fact

5  that Plaintiff is asserting misrepresentation claims precluded by SLUSA.

6  Accordingly, any amendment would be futile and dismissal with prejudice is

7  warranted.

8  **VII.   CONCLUSION**

9         For the reasons set forth above and in Defendants' Memorandum of Points

10  and Authorities In Support of Defendants' Motion to Dismiss, Plaintiff's FAC

11  should be dismissed with prejudice.

12

13  Dated:          October 19, 2015          Respectfully Submitted,

14                                            DECHERT LLP

15                                            By: /s/       *Joshua D. N. Hess*
                                              Matthew L. Larrabee
16                                            Joshua D. N. Hess
                                              633 West 5th Street, 37th Floor
17                                            Los Angeles, CA 90071

18                                            David A. Kotler (*pro hac vice*)
                                              Suite 500
19                                            902 Carnegie Center
                                              Princeton, NJ 08540-6531
20
                                              *Attorneys for Defendants PIMCO Funds, E.*
21                                            *Philip Cannon, J. Michael Hagan, Ronald*
                                              *C. Parker, and Vern O. Curtis*
22
                                              LAW OFFICE OF FRANK D. RORIE JR.
23                                            Frank D. Rorie Jr.
                                              8335 Sunset Boulevard, Suite 303
24                                            West Hollywood, CA 90069
                                              ROPES & GRAY LLP
25                                            John D. Donovan, Esq. (*pro hac vice*)
                                              Robert A. Skinner, Esq. (*pro hac vice*)
26                                            Amy D. Roy, Esq. (*pro hac vice*)
                                              Prudential Tower, 800 Boylston Street
27                                            Boston, MA 02199

28

DECHERT LLP
ATTORNEYS AT LAW
LOS ANGELES

                          - 19 -          REPLY IN SUPPORT OF MOTION TO
                                          DISMISS, CASE NO.  8:15-CV-00131-CJC-JCG

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

John C. Ertman, Esq. (*pro hac vice*)
1211 Avenue of the Americas
New York, NY 10036

*Attorneys for Defendant Pacific Investment
Management Company LLC, Brent R.
Harris, and Douglas M. Hodge*

BROWN RUDNICK LLP
Ronald Rus, Esq.
Randall A. Smith, Esq.
Leo J. Presiado, Esq.
2211 Michelson Drive, 7th Floor
Irvine, CA 92612

*Attorneys for Defendant William J. Popejoy*

DECHERT LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

REPLY IN SUPPORT OF MOTION TO
DISMISS, CASE NO.  8:15-CV-00131-CJC-JCG