# JS-6

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| | ) Case No.: SACV 15-00131-CJC(JCGx) |
| WILLIAM T. HAMPTON, | ) |
| Plaintiff, | ) |
| v. | ) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| PACIFIC INVESTMENT MANAGEMENT COMPANY, LLC, et al., | ) |
| Defendants. | ) |

## I.  INTRODUCTION

This securities class action was brought against Pacific Investment Management Company, LLC ("PIMCO"), PIMCO Funds (the "Trust"), and seven of PIMCO's employees ("the Trustees," together with PIMCO and the Trust, "Defendants") for breach

of contract, breach of trust, breach of the covenant of good faith and fair dealing, and aiding and abetting the other causes of action.  The causes of action all arise from the investment activity of a mutual fund managed by the Trust and advised by PIMCO called the Total Return Fund (the "Fund").  Plaintiff William Hampton, and others similarly situated, purchased and/or held shares of the Fund between April 1, 2014 and September 12, 2014.  Plaintiff alleges that the Fund exceeded a self-imposed limit on what proportion of its investments could be in securities or instruments tied to emerging market countries.  Before the Court is the Defendants' motion to dismiss, which Defendants make on a number of grounds, including that each of the causes of action here is precluded by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  (Dkt. 57 ["Def.'s Mot."].)  Because the Court concludes that SLUSA does indeed bar these claims, and because amendment would be futile, Defendants' motion is GRANTED and each of the causes of action is dismissed with prejudice.

## II.  FACTUAL BACKGROUND

PIMCO Funds is a Massachusetts business trust which contains a number of publicly offered "funds," including the one at issue here—the Total Return Fund.  (Def.'s Mot. at 2.)  PIMCO serves as the investment advisor to the Fund, and the seven named Trustees were the trustees of the Fund during the relevant time period.  (FAC ¶¶ 16–26.) The Fund is required by federal law to register with, and make certain disclosures to, the SEC.  Consistent with these requirements, the Fund regularly publishes prospectuses which describe its investment policies.  According to the Complaint, beginning at least as early as 2012, the Fund's prospectuses informed shareholders that the Fund "may invest up to 15% of its total assets in securities and instruments that are economically tied to emerging market countries."  (FAC ¶ 7; *see also* Dkt. 59-1 at 7.)[1]  The parties refer to

---

[1]  Both parties submitted requests asking the Court to take judicial notice either of materials referenced in the FAC or filings submitted to the SEC.  (Dkt. 58; Dkt. 65.)  None of the materials is "subject to

this limit as the "Cap" or the "15% Cap."  In 2014, Plaintiff alleges that Defendants ignored the 15% Cap and invested a larger proportion of the Fund's assets in instruments or securities tied to emerging markets.  (FAC ¶¶ 50–52.)  Plaintiff alleges, based on Defendant's published quarterly reports, that the percentage of the Fund's assets invested in emerging markets reached 21% in June 2014 and 23% of September 2014.  (*Id.*)  In September 2014, the Fund announced that it was changing its investment policies and that the 15% Cap would no longer apply to "investment grade sovereign debt denominated in the local currency with less than 1 year remaining to maturity."  (FAC ¶ 9.)  Plaintiff believes that the Fund's decision to exceed the investment limit caused the value of investors' shares in the Fund to fall.

## III.  PROCEDURAL HISTORY

This action began in January 2015, when Plaintiff filed a Complaint alleging a single cause of action for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.  (Dkt. 1 ["Compl."].)  Plaintiff's original Complaint alleged that PIMCO and the Fund violated federal securities laws by "investing in risky derivatives beyond the amounts allowed under the funds' restrictions."  (Compl. ¶ 21.)  In March 2015, Plaintiff moved for Lead Plaintiff designation under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and the Court granted Plaintiff that status in April 2015.  (*See* Dkt. 7; Dkt. 17.)  Subsequently, on July 6, Plaintiff submitted a First Amended Complaint.  (Dkt. 21 ["FAC"].)  The First Amended Complaint added the Trustees as defendants and dramatically changed the substance of Plaintiff's claims, jettisoning his 10b-5 cause of action in favor of state law claims for breach of contract, breach of trust, breach of the covenant of good faith and

---

reasonable dispute," Fed. R. Evid. 201(b), and the parties do not oppose each other's requests. Accordingly, the requests for judicial notice are GRANTED.  *See U.S. v. Ritchie*, 342 F.3d 903, 908–09 (9th Cir. 2003) (courts may appropriately take judicial notice of the "records and reports of administrative bodies" as well as "documents incorporated by a reference in the complaint").

fair dealing, and aiding and abetting.  (*See* FAC ¶¶ 83–107.)  Like the original Complaint, the FAC based its causes of action on an allegation that the Fund exceeded an investment restriction, but unlike the Complaint, the FAC identified the Fund's relevant restriction as being on its investments in securities and instruments linked to emerging markets (and not its restriction on derivatives).  On October 5, Defendants filed this motion to dismiss, arguing that each of Plaintiff's claims is precluded by SLUSA.[2]

## IV.  LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(2).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party.  *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  The district court may also consider additional facts in materials that the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled in part on*

---

[2]  Following a full round of briefing on Defendants' motion to dismiss, Plaintiff submitted an *ex parte* application for leave to file a sur-reply, arguing that Defendants raised new arguments for the first time in their reply brief.  (Dkt. 68.)  That application is DENIED.  The Court has reviewed the arguments Plaintiff identified as being new, and concludes that Defendants were merely responding to arguments made in Plaintiff's opposition brief.  Additionally, the Court notes that the proposed sur-reply did not speak particularly to the issue of SLUSA preclusion, and even if it were appropriate to consider the sur-reply, doing so would not change the Court's ruling on Defendants' motion.

*other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, courts "are not bound to accept as true a legal conclusion couched as a factual allegation" (citations and quotes omitted)).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Finally, "a plaintiff 'may plead [him]self out of court'" if he pleads "facts which establish that he cannot prevail" on his claim.  *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

## V.  DISCUSSION

In 1995, Congress enacted PSLRA, which was designed to "deter or at least quickly dispose of [securities] suits whose nuisance value outweigh[ed] their merits" by instituting a number of procedural hurdles for securities actions brought under federal law.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 82 (2006).  In response to these new procedural difficulties, "plaintiffs and their representatives began bringing [securities] class actions under state law, often in state court." *Id.*  In an effort to "channel securities fraud litigation away from state-law class actions and into the federal courts" under PSLRA, Congress enacted SLUSA, which precludes certain securities class actions brought under state law.  *Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1218 (9th Cir. 2009).  Specifically, "SLUSA bars private plaintiffs from bringing (1) a covered class action (2) based on state law claims (3) alleging that defendant made a misrepresentation or omission or employed any manipulative or deceptive device (4) in

connection with the purchase or sale of (5) a covered security." *Freeman Investments, L.P. v. Pacific Life. Ins. Co.*, 704 F.3d 1110, 1114–15 (9th Cir. 2013).

The parties agree that this action is a covered class action, that it is based on state law claims, and that the securities at issue are covered securities under SLUSA.  They dispute, however, whether this action alleges a misrepresentation on the part of Defendants, whether it is "in connection with the purchase or sale" of a covered security, and whether an exception to SLUSA preclusion called the "Delaware carve-out" applies. The Court will address each of these issues in turn.

## 1. Misrepresentation

The misrepresentation criterion for SLUSA preclusion is met "wherever deceptive statements or conduct form the gravamen or essence of the claim." *Freeman*, 704 F.3d at 1115.  "Misrepresentation need not be a specific element of the claim to fall within the Act's preclusion." *Proctor*, 548 F.3d at 1222 n.13.  Instead, courts routinely hold that state law claims are precluded whenever "allegations of a material misrepresentation serve as the factual predicate of a state law claim." *Id.* (quoting *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3d Cir. 2005)).  Accordingly, courts in the Ninth Circuit have found a variety of state law claims to be precluded under SLUSA because they were based on allegations of misrepresentations.  *See*, *e.g.*, *Northstar Financial Advisors Inc. v. Schwab Investments*, Case No. 08-CV-04119-LHK, 2015 WL 5785549, at *18, 22 (N.D. Cal. Oct. 5, 2015) ("*Northstar VI*") (dismissing breach of contract and third-party beneficiary claims as precluded under SLUSA)[3]; *Proctor*, 584 F.3d at 1221–22 (dismissing breach of fiduciary duty claim as precluded); *Hanson v. Morgan Stanley*

---

[3]  The *Northstar* litigation has progressed in the Northern District over several years and produced a number of significant orders and opinions before the district court and Ninth Circuit.  Although only the two most recent orders or opinions are germane to this disposition, the Court follows the parties' nomenclature and refers to them as *Northstar V* and *Northstar VI*, respectively.

*Smith Barney, LLC*, 762 F. Supp. 2d 1201, 1208 (C.D. Cal. 2011) (dismissing section 17200 claim as precluded).  Crucially, courts examine the substance of the allegations and not the particular words plaintiffs may use to describe them.  As such, plaintiffs cannot avoid preclusion "through artful pleading that removes the covered words . . . but leaves in the covered concepts."  *Freeman*, 704 F.3d at 1115 (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009)).

Here, Defendants contend that Plaintiff is attempting to assert a securities fraud claim "dressed as" state law claims in order to avoid SLUSA preclusion.  (Def.'s Mot. at 10.)  Plaintiff, in response, argues that SLUSA preclusion does not apply to his claims because he "does not allege a misrepresentation, omission, or manipulative or deceptive device."  (FAC ¶ 74.)  But as the *Northstar VI* court observed, "[s]aying something does not make it so."  *Northstar VI*, 2015 WL 5785549, at *16.  In fact, Plaintiff's claims all rely on an alleged misrepresentation.  Plaintiff argues that the Fund represented to its shareholders that it would not exceed a particular investment limit, and then proceeded to do exactly what it said it would not do, thereby harming shareholders, who believed that the Fund would abide by its stated restrictions.

The FAC, which is riddled with statements evidencing that Plaintiff's claims actually arise from an alleged misrepresentation, confirms this conclusion.  For example, the FAC alleges that Defendants exceeded the 15% Cap "[d]espite [their] repeated representations" not to do so, (FAC ¶ 8), that the "statements [in the prospectuses] unequivocally indicated that the Fund's exposure to risky emerging markets would be limited to 15% of Fund assets," (FAC ¶ 68), and that "the Trust's statements concerning investment of Fund assets . . . were a substantial contributing cause of[] the damages sustained by Lead Plaintiff and other members of the Class," (FAC ¶ 72).  The FAC goes on to note that "whether Defendants made specific representations about investments in emerging markets" and "whether Defendants deviated" from those representations are

questions of law or fact common to the class.  (FAC ¶ 81.)  These statements are difficult to square with Plaintiff's insistence that he is not alleging a misrepresentation.  Indeed, the purported misrepresentation at issue here—"We will stick to the investment limit"— forms the factual predicate for each of Plaintiff's claims.

Other courts in similar situations have found that state law claims are premised on an alleged misrepresentation.  *See Northstar VI*, 2015 WL 5785549, at *16; *Smit v. Charles Schwab & Co., Inc.*, No. 10-CV-03971-LHK, 2011 WL 846697 (N.D. Cal. Mar. 8, 2011) (holding that a claim that a fund deviated from an investment objective met the misrepresentation criterion for SLUSA preclusion).  *Northstar VI* is particularly on-point.  There, like here, the plaintiff alleged that the mutual fund in question breached a contract with shareholders by "deviat[ing] from [its] investment objectives," which contained representations regarding how much of the fund's assets could be concentrated in a single industry.  *Northstar VI*, 2015 WL 5785549, at *1.  The plaintiff there attempted to avoid SLUSA preclusion by alleging in its complaint that liability was not predicated on misrepresentations or omissions.  But the *Northstar VI* court called this "artful wordsmithing," and went on to explain that the plaintiff's allegations boiled down to this: "The [a]dvisor represented to the [t]rust (and, ultimately, to shareholders) that the [a]dvisor would do one thing, but ended up doing another.  That is a misrepresentation in the most classic sense."  *Id.* at *16.  The same, of course, is true here.  Plaintiff argues that Defendants promised to do one thing, ended up doing another thing, and in the process harmed Plaintiff and other putative class members, who believed that the Defendants would keep their word.  That is a misrepresentation claim.

Plaintiff attempts to distinguish *Northstar VI*, noting that there, the court described the plaintiff as alleging that "[e]ither the advisor misrepresented what was going on, or the [a]dvisor declined to inform shareholders of the [a]dvisor's decision to abandon the [f]und's core investment objectives."  *Northstar VI*, 2015 WL 5785549, at *17.  Plaintiff

argues that here, by contrast, Defendants "openly disclosed" their decision to exceed the 15% Cap by publishing updates that indicated its investments in emerging market instruments exceeded 15%. (Dkt. 64 ["Opp'n"] at 21.) Because Defendants were ultimately up-front about their exceeding the Cap, Plaintiff argues, this case cannot be said to concern a misrepresentation. But this attempted distinction mischaracterizes Plaintiff's own FAC, which complains that even after the Fund modified the 15% Cap, its publications "contained no disclosures concerning whether over 15% of the Fund's assets had previously been invested in emerging markets." (FAC ¶ 10.) Indeed, the entire theory of Plaintiff's FAC is that investors were hoodwinked by the Fund's repeated representations that it would not exceed the 15% Cap, and this theory does not change even if the Fund later confessed to exceeding the Cap. Even if the Fund had been candid about choosing to exceed the relevant investment limit, its prior statements that it would not exceed the limit would still be misrepresentations.

Plaintiff cites to two other cases in an attempt to establish that his claims really arise from a garden-variety breach of contract and not from an alleged misrepresentation. First, Plaintiff notes that in holding that a breach of contract claim was not precluded by SLUSA, *Freeman* warned that "defendants may not recast contract claims as fraud claims by arguing that they 'really' involve deception or misrepresentation." *Freeman*, 704 F.3d at 1116. But the *Freeman* court explained that the contract claim there was not precluded because the claim centered on a dispute over the meaning of a particular contractual term. *Id.* at 1115. Prevailing on their contract claim therefore would *not* have required the *Freeman* plaintiffs "show that [the defendant] misrepresented . . . or omitted" the relevant information. *Id.* Instead, the plaintiffs in that case only needed to demonstrate that "theirs [was] the better reading of the contract term." *Id.* By contrast, here each of Plaintiff's claims turns on whether or not representations made by Defendants—namely, that they would not exceed the 15% Cap—were true or not. Plaintiff may not prevail on

any of his claims without a showing of a misrepresentation.  *Freeman* is therefore inapposite.[4]

Plaintiff also notes an out-of-circuit case, *In re Kingate Mgmt. Ltd. Litig.*, 748 F.3d 128 (2d Cir. 2015), which held that certain claims were not precluded by SLUSA because "[p]roof of those claims would not require any showing of false conduct on the part of [the defendants]."  *Id.* at 152.  But Plaintiff's claims *would* require such a showing, and in any event, *Kingate* found that the relevant claims were not precluded because the alleged misrepresentations were made *by third parties*, and not the defendants in that case.  *Id.* at 150.  There is no comparable allegation here, since the relevant misrepresentations are alleged to have been made by PIMCO, the Trust, and the Trustees.

In short, Plaintiff's claims all rise and fall with his allegation that Defendants made an important misrepresentation about how the Fund would invest their money.  That is precisely the sort of claim SLUSA was intended to preclude in order to give the PLSRA procedural requirements teeth.  Declining to find Plaintiff's claims precluded would ignore the Supreme Court's direction that courts give SLUSA a "broad construction," since a "narrow reading of the statute would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose."  *Merrill Lynch*, 547 U.S. at 86.  As a result, the Court finds that Plaintiff's claims are premised on an alleged misrepresentation for the purposes of SLUSA preclusion.

---

[4] Plaintiff also argues that this case is like *Freeman* because there is a dispute between the parties as to the interpretation of a contractual term—whether the 15% Cap relates to "total" assets or "net" assets.  (Opp'n at 21 n.8.)  But as Defendants point out, neither party actually disputes that the 15% Cap refers to total assets.  The only dispute is a factual one—whether figures Defendants published in its quarterly reports were calculated from total assets or net assets.  (Def.'s Reply at 6 n.4.)

### 2.  In Connection With

Plaintiff next argues that his claims are not precluded by SLUSA because they do not arise "in connection with the purchase or sale of a covered security," as SLUSA requires.  This argument is unpersuasive.  "Misrepresentation occurs 'in connection with' the purchase or sale of a covered security if 'the fraud and the stock sale coincide or are more than tangentially related.'"  *Freeman*, 704 F.3d at 1116 (quoting *Madden v. Cowen & Co.*, 576 F.3d 957, 966 (9th Cir. 2009)).  The fraud in question need only "relate to the nature of the securities, the risks associated with their purchase or sale, or some other factor with similar connection to the securities themselves."  *Id.* (quoting *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1130–1131 (9th Cir. 2002)).  And the Supreme Court has particularly instructed lower courts to "construe SLUSA's 'in connection with' language broadly, 'not technically and restrictively.'"  *Id.* (quoting *SEC v. Zandford*, 535 U.S. 813, 819 (2002)).

Here, Plaintiff alleges that the misrepresentation at issue was made in a prospectus.  A prospectus, the Supreme Court has explained, "is a term of art referring to a document that describes a public offering of securities."  *Gustavson v. Alloyd Co.*, 513 U.S. 561, 584 (1995).  It is therefore difficult to see how Plaintiff's allegations could *not* arise "in connection with the purchase or sale of a covered security," seeing as prospectuses are the chief tool funds employ to market securities to potential investors.  Plaintiff's specific allegations—that he "purchased shares of the Fund" and "sustained losses as a direct result of the wrongful conduct alleged"—therefore plainly constitute the requisite connection to the purchase or sale of a covered security.  (FAC ¶ 15.)  Plaintiff offers no examples of courts holding that analogous claims failed to arise "in connection with" the sale or purchase of securities.  Indeed, considering the almost identical facts in the *Northstar* litigation, the Ninth Circuit concluded that there was "no question that this class action is 'in connection with the purchase or sale' of a covered security."  *Northstar*

*Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036, 1049 n.5 (9th Cir. 2015) ("*Northstar V*").  The question is similarly clear here, and the "in connection with" requirement is met.

### 3.  Delaware Carve-Out

Even when the criteria for SLUSA preclusion are met, SLUSA exempts from preclusion certain claims that fall under a provision called the "Delaware carve-out."  To fall under the Delaware carve-out, claims must meet two requirements.  First, they must be "based upon the statutory or common law of the State in which the issuer is incorporated . . . or organized."  15 U.S.C. § 77p(d)(1)(A).  Here, Plaintiff brings claims under Massachusetts state law against entities organized in Massachusetts, so this requirement is met.  The second requirement for claims to fall under the Delaware carve-out is that those claims must be part of a "permissible action" under the meaning of 15 U.S.C. § 77p(d)(1)(B).  Permissible actions are actions that involve:

> (i) the purchase or sale of securities by the issuer or an affiliate of the issuer exclusively from or to holders of equity securities of the issuer *or*

> (ii) any recommendation, position, or other communication with respect to the sale of securities of the issuer that . . . is made by or on behalf of the issuer or an affiliate of the issuer to holders of equity securities of the issuer . . . *and* concerns decisions of those equity holders with respect to voting their securities, acting in response to a tender or exchange offer, or exercising dissenters' or appraisal rights.

15 U.S.C. § 77p(d)(1)(B) (emphasis added).  The parties agree that only the second prong is at issue here.  Plaintiff argues that this lawsuit qualifies as a permissible action under the Delaware carve-out because shareholders *should have been* able to vote on the change to the 15% Cap, and therefore this action "concerns decisions of those equity holders with respect to voting their securities."  (*See* Dkt. 64 at 22–24.)  Defendants dispute that

the change required a shareholder vote but argue that in any event, no vote was held, so this action cannot credibly be said to "concern decisions of those equity holders with respect to voting their securities."  Defendants are correct.  The *Northstar VI* court explained that the second prong is designed to exempt cases where "entities provide[] false or misleading information in advance of a vote . . . in an attempt to induce voters to vote in a certain way."  *Northstar VI*, 2015 WL 5785549, at *21; *see also Crimi v. Barnholt*, No. C 08-02249 CRB, 2008 WL 4287566, at **3–5 (dividing claims into "holder claims" and "voting claims" based on whether the claims arose from allegations of misrepresentations designed to influence one of two separate votes, and then dismissing the holder claims—but not the voting claims—as precluded under SLUSA). Here, no vote was held at all.  It is not entirely clear why the Fund made the alleged misrepresentations that it did, but it *is* clear that the reason was not to influence some nonexistent vote.  Plaintiff has not cited, nor can the Court locate, any cases in which a court held that the second prong of the Delaware carve-out applies in the absence of a vote.  Accordingly, the Delaware carve-out does not operate to save any of Plaintiff's claims from SLUSA preclusion.

//
//
//
//
//
//
//
//
//
//
//

## VI.  CONCLUSION

Each of Plaintiff's claims rests on allegations of misrepresentations by PIMCO, the Fund, the Trust, or the Trustees.  For the foregoing reasons, each of those claims is precluded by SLUSA.  Defendants' motion to dismiss is therefore GRANTED.  Because the Court sees no viable path whereby Plaintiff could plead a state law claim that does not involve the misrepresentations alleged, each of the causes of action is dismissed with prejudice.

DATED:     November 2, 2015

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE